**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re:<br><br>DEBRA L. FELDMAN,<br><br>        Debtor | Chapter 7<br>Case No. 16-13432-JEB |

## MEMORANDUM OF DECISION

This matter came before the Court on (i) an Order to Show Cause issued on March 12, 2020, ("March 12 Order") against Debra Feldman, the within debtor ("Debtor"), and her brother, David Feldman, ("Feldman")[1], and (ii) an Order to Show Cause issued on July 2, 2020, ("July 2 Order") against the Debtor. Each of the Orders was prompted by specific pleadings filed by the Debtor and Feldman as well as the conduct of the Debtor and Feldman in this case and the related adversary proceedings.

The March 12 Order required the Debtor and Feldman to show cause (i) why they should not be sanctioned for filing a motion dated February 11, 2020, ("Sanctions Motion") seeking sanctions against H&R Block Eastern Enterprises, Inc. ("HRB"), and certain other individuals, and (ii) why the Court should not restrict further filings by the Debtor and Feldman in this case and the related adversary proceedings. The March 12 Order also required the Debtor to show cause why the Court should not find that she had been practicing law without a license in violation of Massachusetts law in this case and the related adversary proceedings. The July 2 Order required the Debtor to show cause why she should not be sanctioned under Bankruptcy

---

[1] The March 12 Order also was issued against the Debtor's mother, Roberta Newell, ("Newell"). On April 18, 2020, Newell died. The Court released the estate of Newell from the order on May 19, 2021.

Rule 9011 in connection with a motion for reconsideration dated May 28, 2020

("Reconsideration Motion"), for making misleading and inaccurate assertions regarding

statements made by the Chapter 7 Trustee, John Desmond ("Trustee").

The Court held an evidentiary hearing over three days, at which the Debtor, Feldman, and

the Trustee testified. The Court also admitted multiple exhibits submitted by the parties and took

judicial notice of the record of these proceedings and the related adversary proceedings. After

closing arguments by the parties, the Court took the matter under advisement.

This Memorandum of Decision constitutes the findings of fact and conclusions of law

pursuant to Federal Rule 52(a), made applicable to this proceeding by Bankruptcy Rule 7052.

The findings set forth in this Memorandum are based on the record as a whole and may be

supported by testimony and exhibits that are not specifically cited. Any finding of fact deemed a

conclusion of law is adopted as such, and vice versa. Findings of fact may also be set forth in the

Analysis section in connection with the application of the law.

**SUMMARY**

For the reasons set forth in this Memorandum, the Court finds that sanctions are

appropriate and warranted against both the Debtor and Feldman pursuant to the March 12 Order

and against the Debtor pursuant to the July 2 Order. Both the Debtor and Feldman have engaged

in extensive and relentless vexatious litigation, repeatedly ignoring their lack of standing, the

prior rulings of the Court, and their obligations under Rule 9011. Both the Debtor and Feldman

filed the Sanctions Motion without a good faith basis under the law in violation of Rule 9011. In

addition, the Debtor engaged in the practice of law without a license by drafting, researching,

and filing pleadings on behalf of her mother, Newell, and her brother, Feldman. Finally, the

Court finds that the Debtor intentionally and deliberately misrepresented statements of the

2

Trustee in the Reconsideration Motion.

As more fully set forth below, the Court will issue an order granting an award of fees to the Trustee and HRB as sanctions for such conduct. In addition, the Court will restrict any further filings by the Debtor and Feldman, with appropriate safeguards for defensive pleadings and appeals.

**JURISDICTION**

The Court has jurisdiction regarding this bankruptcy proceeding and the related adversary proceedings. Under Section 1334(b) of title 28, the district courts have jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11," subject to exceptions not applicable here. 28 U.S.C. § 1334(b). By a standing order of reference in accordance with Section 157(a) of title 28, the district court in this district has referred all cases under title 11 and any proceedings arising under, arising in, or related to cases under title 11, to the bankruptcy court. *See* 28 U.S.C. § 157(a). Matters regarding the administration of the estate are core proceedings in bankruptcy. 28 U.S.C. § 157(b)(2)(A). Accordingly, this Court may hear and finally determine these matters.

**BACKGROUND AND FINDINGS OF FACTS**

The background and findings of fact are based on the testimony of the witnesses at the evidentiary hearing, the exhibits submitted at the evidentiary hearing, and the filings in this case and the related adversary proceedings. In addition to the main bankruptcy case (Case No. 16-13432), there are five related adversary proceedings. The Adversary Proceedings include: (i) Adversary Proceeding No. 17-01043 ("Section 548 Adversary"), commenced by the Trustee against Newell and Feldman to recover fraudulent transfers; (ii) Adversary Proceeding No. 17-01068 ("Discharge Adversary") commenced by the Trustee objecting to the Debtor's

discharge; (iii) Adversary Proceeding No. 17-01117 ("Newell Adversary") commenced by Newell and Feldman against the Debtor; (iv) Adversary Proceeding No. 18-01014 ("Debtor's Adversary") commenced by the Debtor against HRB; and (v) Adversary Proceeding No. 21-01020 ("Section 363(h) Adversary") commenced by the Trustee against the Debtor and Feldman as trustee of the Roberta G. Newell Living Trust ("Newell Trust"). The actions in the main bankruptcy case and the adversary proceedings were often related, with a ruling in one case triggering filings by the Debtor and Feldman in another case. Given the extensive litigation that has ensued, the Court has not included the entire history of the case and each of the adversary proceedings. The Court has included only the facts and background relevant to this decision. The Court has also not reconciled minor discrepancies, unless material or relevant to the rulings. Finally, the Court has not considered the subsequent filings by the Debtor after the conclusion of the evidentiary hearing.

The Debtor is highly educated. She holds a Bachelor of Fine Arts and a master's in information science. She attended one year of law school. She was employed as a tax preparer or enrolled agent for more than 18 years as of the hearing. During each of those years, she took additional continuing legal education courses.

Prior to the commencement of the proceedings, the Debtor was employed by HRB as a tax professional for fourteen years. After her employment ended in November 2014, the Debtor opened a competing tax business. In April 2015, HRB commenced litigation against the Debtor in Massachusetts state court seeking to enforce noncompete provisions in her employment contracts. The parties submitted the matter to arbitration. On August 30, 2016, the arbitrator issued a partial final award ("Award"), finding that the Debtor had violated the noncompete provisions and awarding HRB permanent injunctive relief. The arbitrator found that HRB was

also entitled to attorneys' fees and costs in an amount to be subsequently determined.

Shortly after the Award was issued, on September 2, 2016, the Debtor commenced this bankruptcy proceeding under Chapter 7 of the Code. The Debtor was initially represented by counsel. The Debtor filed her initial Schedules and Statement of Affairs on September 9, 2016. The initial Schedules did not include either Feldman or Newell as creditors. They also did not include any claims against HRB. The Statement of Financial Affairs did not include several transfers of real and personal property by the Debtor, including transfers to Newell and Feldman.

On October 31, 2016, HRB filed a motion for relief from the stay to continue the state court litigation but only for the purposes of enforcing its equitable remedies, including the preliminary injunction. The Debtor objected to the relief and the Court held a hearing. After hearing arguments by the parties, the Court overruled the Debtor's objection. By order dated November 29, 2016, the Court granted HRB's motion for relief to enforce the equitable remedies in the Award, but ruled that the stay remained in effect with respect to collection of monies against the Debtor.

Two days after the Court granted HRB relief from the stay, on December 1, 2016, the Debtor filed a motion to dismiss the bankruptcy case. In the motion, the Debtor admitted that she had filed the petition to resolve the litigation with HRB, but now wished to resolve it in state court. The Trustee and HRB opposed the motion to dismiss. The Trustee argued that the Debtor failed to state sufficient cause for dismissal. In addition, the Trustee stated that there were potential assets based on the recovery of prepetition transfers by the Debtor, including transfers the Debtor failed to disclose in her Schedules or statement of affairs.

The Court held a hearing on May 10, 2017, on the Debtor's motion to dismiss the bankruptcy case. After hearing arguments by the parties, the Court denied the motion.

Shortly before the hearing on the motion to dismiss, on May 8, 2017, the Trustee commenced the Section 548 Adversary against Newell and Feldman. The Section 548 Adversary initially sought to avoid prepetition transfers by the Debtor of real property in New Hampshire ("New Hampshire Property") and an investment account as preferences or fraudulent transfers. Newell and Feldman, represented initially by counsel, filed answers on June 1, 2017.

On June 6, 2017, the Trustee filed a motion to amend the complaint in the Section 548 Adversary. He sought to amend the complaint to include a transfer by the Debtor of real property in Chestnut Hill, Massachusetts ("Chestnut Hill Property"), stating that he had recently learned of the transfer. He also sought to add the Newell Trust as a defendant, as the current owner of the New Hampshire Property. The Trustee also sought approval of memoranda of lis pendens against the New Hampshire Property and the Chestnut Hill Property. Two days after the Trustee filed the foregoing motions, Newell and Feldman, represented by counsel, filed a motion seeking to stay the Section 548 Adversary pending resolution of an appeal filed by the Debtor in the state court regarding the judgment by HRB.

On June 13, 2017, the Court held a hearing in the Section 548 Adversary regarding the Trustee's pending motion to amend, the requests for the memoranda of lis pendens, and the defendants' motion to stay. After hearing arguments by the parties, the Court granted the Trustee's motions to amend the complaint and to record lis pendens against both properties. The Court denied the request by Newell and Feldman for a stay. Newell and Feldman filed a further answer to the amended complaint on June 22, 2017.

The Trustee also filed a motion in the main bankruptcy case on June 6, 2017, seeking to extend the deadline to object to the Debtor's discharge given the recent discovery of additional prepetition transfers. On June 15, 2017, counsel for the Debtor filed a motion in the main

bankruptcy case seeking to withdraw. The motion alleged a disconnect between the Debtor and counsel, including with respect to the Debtor's failure to disclose prepetition transfers. The Debtor filed pro se pleadings opposing the Trustee's motion to extend the discharge deadline. In addition, the Debtor filed a response to counsel's motion to withdraw, blaming counsel for the failure to disclose the transfers.

On June 20, 2017, the Court granted the Trustee's motion to extend the deadline to object to the discharge, overruling the Debtor's objection. On July 7, 2017, the Trustee commenced the Discharge Adversary against the Debtor. The Trustee objected to the Debtor's discharge on multiple grounds, including under Section 727(a)(2)(A) based on the prepetition transfer of property with the intent to hinder, delay or defraud a creditor, under Section 727(a)(2)(B) based on the postpetition transfer of certain real property with the intent to hinder, delay or defraud the Trustee or a creditor, and under Section 727(a)(4) based on false oaths in the Schedules and Statement of Affairs for failing to disclose various assets and transfers.

The Court held a hearing on July 25, 2017, on the motion to withdraw filed by Debtor's counsel. After hearing, the Court granted the motion to withdraw by counsel. Since counsel's withdrawal, the Debtor has continued to represent herself in the main bankruptcy case. She also has represented herself in the various adversary proceedings, except for the later appearance of new counsel on her behalf in the Discharge Adversary, which is discussed below.

On July 27, 2017, the Debtor filed a motion to amend the matrix to add Newell and Feldman. Although she stated that her mother and brother were "fully paid" as of the filing, she asserted that they were creditors if they had to "unpay" the amounts sought in the Section 548 Adversary. Case 16-13432, Dkt. No. 105. On July 28, 2017, making the same statements, the Debtor filed a motion to amend her Schedules to add Newell and Feldman as secured creditors.

Despite having stated in her Motion that Newell and Feldman had been paid in full as of the filing, the Debtor did not list the claims as contingent on Schedule D.

In September 2017, numerous pro se pleadings were filed by the Debtor, Newell, and Feldman in the main bankruptcy case and in the adversary proceedings. First, in the main case, Feldman filed two proofs of claim claiming money owed. He testified in his deposition that the Debtor prepared the claims and sent them to him for signature. He also testified that the Debtor told him that he needed to attach documents to the claims and then the Debtor sent him those documents. The claims filed by Feldman did not reflect that they were contingent upon a recovery by the Trustee. Newell also filed two claims in the main bankruptcy case. Neither of the claims filed by Newell reflected that they were contingent upon a recovery by the Trustee.

Although Newell and Feldman had been represented by counsel in the Section 548 Adversary, on September 14, 2017, they filed a notice that counsel was discharged. Newell and Feldman began and continued filing pleadings pro se in the Section 548 Adversary, as well as in the main bankruptcy case. On September 14, 2017, Newell and Feldman filed a motion to dismiss the Section 548 Adversary for failure to state a claim. On September 15, 2017, Feldman and Newell also expanded the litigation by commencing the Newell Adversary. Although purportedly a complaint objecting to the discharge of the Debtor, in the Newell Adversary, Feldman and Newell sought a finding that the Debtor was entitled to a discharge.

In addition to the foregoing filings by Newell and Feldman, the Debtor also filed a motion to dismiss the Discharge Adversary on September 7, 2017, for failure to state a cause of action. The motion did not address the issues in the complaint in the Discharge Adversary. Instead, the Debtor used the motion to argue that the Trustee did not have claims against Newell and Feldman for preferences or fraudulent conveyances

8

The Trustee opposed the motions filed by Feldman and Newell in the Section 548 Adversary and opposed the motion to dismiss by the Debtor in the Discharge Adversary. The Court held hearings on the pending motions on November 8, 2017. After hearing arguments by the parties, the Court denied the motion to dismiss filed by Newell and Feldman in the Section 548 Adversary. The Court also granted leave for counsel for Newell and Feldman to withdraw in the Section 548 Adversary. Since the Newell Trust could not act pro se, the Court required successor counsel to appear for the Newell Trust. In the Discharge Adversary, the Court denied the Debtor's motion to dismiss. In the Newell Adversary, the Court entered an order staying the proceeding pending further order of the Court.

On November 14, 2017, the Debtor filed a motion in the main bankruptcy case seeking to amend Newell's claim. The Court denied the motion on the basis that the Debtor lacked standing to amend a creditor's claim.

In February 2018, the Debtor commenced another round of litigation by filing the Debtor's Adversary against HRB. In the Debtor's Adversary, the Debtor sought to disallow or equitably subordinate the claim of HRB. HRB filed a motion to dismiss on several grounds, including the lack of standing of the Debtor.

In addition, in February 2018, Feldman and Newell filed a motion seeking discovery by interrogatory instead of deposition for both Feldman and Newell. In the Motion, they argued that a deposition posed issues for Newell given her poor health. The motion stated that Newell was 94 years old in failing health and had been badly injured and weakened by several falls. The Trustee filed an opposition, stating that he would make accommodations regarding the depositions, but wanted the flexibility to proceed with the depositions.

In March 2018, the Debtor also began litigation against HRB on another front. She filed a

9

complaint in state court against HRB and its attorneys. She sought damages for assault and battery for an alleged incident that occurred prepetition in May 2016. The claims asserted by the Debtor were not listed on her Schedules. Subsequently, in May 2018, the Trustee was substituted for the Debtor as plaintiff in the state court action.

On April 23, 2018, the Court held hearings on the motions pending in the Debtor's Adversary and the Section 548 Adversary. After hearing arguments by the parties, the Court granted HRB's motion and dismissed the Debtor's Adversary. The Court ruled that since the case was not a surplus case, the Debtor did not have standing to object to the claims of HRB or seek their equitable subordination. The Court also denied the motion in the Section 548 Adversary to avoid the depositions, noting that the Trustee agreed to make accommodations to address the issues raised.

On June 1, 2018, the Trustee filed a motion to enter into a compromise with HRB and its counsel. The Trustee sought to settle the claims of the Debtor against HRB, including the claims for assault and battery. The settlement agreement provided for a payment of $9,000 to the estate in exchange for a release of all claims of the estate and Debtor against HRB and its counsel.

Prompted by the Trustee's motion to compromise, the Debtor, Newell, and Feldman began another round of litigation. On June 25, 2018, the Debtor, Newell, and Feldman filed a joint opposition to the compromise motion in the main bankruptcy case. Two days later, on June 27, 2018, Newell and Feldman filed notices that the Debtor would act on their behalf in the Section 548 Adversary under executed powers of attorney. Shortly after those filings, on July 2, 2018, the Debtor filed pleadings in both the main bankruptcy case and in the Section 548 Adversary. In the main bankruptcy case, the Debtor filed a motion seeking to amend the complaint in the state court litigation and a separate request for the production of documents by

10

the Trustee. In the Section 548 Adversary, the Debtor acting on behalf of Newell filed a motion

for a protective order to avoid the deposition of Newell and have the Debtor deposed instead.

The motion again recited Newell's failing health.

On July 3, 2018, the Court entered orders in the Section 548 Adversary stating that the

Debtor as holder of a power of attorney could not act pro se on behalf of Newell and Feldman.

The Court denied the motion for the protective order since the Debtor could not represent her

mother pro se under the power of attorney.

After the Court entered its orders, the Debtor, Newell, and Feldman filed additional

pleadings in the main bankruptcy case and the Section 548 Adversary. On July 5, 2018, Newell

filed a motion for a protective order in the Section 548 Adversary, nearly identical to the prior

motion filed by the Debtor. The Court denied the motion for failure to comply with discovery

motion procedures.

On July 5, 2018, in addition to the Debtor's pending request for documents, the Debtor,

Newell, and Feldman filed a request for production of documents from the Trustee and a motion

to compel documents in connection with the compromise motion. On July 10, 2018, Newell and

Feldman filed a motion seeking to join in the complaint filed in the state court. The Court denied

the motion by Newell and Feldman to join in the state court complaint, since there was no

complaint pending in the bankruptcy court.

The Court held a hearing on August 29, 2018, on the Trustee's motion to compromise

with HRB and the other pending motions. After hearing arguments by the parties, the Court

overruled the objections of the Debtor, Newell, and Feldman to the compromise with HRB. The

Court granted the motion, authorizing the Trustee to enter into the compromise with HRB. Since

the state court litigation had been resolved by the Court's approval of the compromise, the Court

11

denied the motion of the Debtor to amend the state court complaint and the requests by the Debtor, Newell, and Feldman for discovery.

Shortly before the hearing on the compromise motion, on August 24, 2018, the Debtor, Newell, and Feldman filed another round of pleadings in the Section 548 Adversary and the Discharge Adversary. The pleadings purported to show the cases as consolidated and were filed in both adversaries. The first pleading purported to file a Memorandum of Agreement, by which the Debtor, Newell, and Feldman sought to avert the litigation with a postpetition agreement on the Chestnut Hill Property. Despite the Court's prior rulings denying motions to dismiss in each of the adversaries, the Debtor, Newell, and Feldman filed a renewed joint motion to dismiss both the Section 548 Adversary and the Discharge Adversary. In addition, they filed a combined renewed motion to dissolve the lis pendens in the Section 548 Adversary, and a motion to stay discovery in the adversaries until the motions to dismiss could be heard. On September 4, 2018, the Court denied all of the foregoing motions. In denying the motions, the Court stated that the cases were not consolidated and the matters were separate cases with different defendants. The Court also ruled that the attempt to consolidate the actions was done without any legal basis and served to create confusion and unnecessarily burden the Court.

Three days later, on September 7, 2018, Newell and Feldman filed separate motions in the Section 548 Adversary. They again sought relief the Court had previously denied – to dismiss the case and dissolve the lis pendens. They also filed a motion to stay discovery until the motions could be heard. On September 10, 2018, the Debtor also filed a separate renewed motion to dismiss the Discharge Adversary, despite the Court having previously denied such relief.

The Trustee opposed the motions in both adversary proceedings. The motions in both adversaries were scheduled for hearings on October 10, 2018. The day before the hearings, on

October 9, 2018, Feldman filed a motion asking to delay the hearing on the motions in the Section 548 Adversary because Newell fell and suffered pelvic fractures. The Court continued the hearing on the motions in the Section 548 Adversary to December 6, 2018.

The hearing went forward in the Discharge Adversary on October 10, 2018, on the Debtor's motion to dismiss. After hearing arguments by the parties, the Court denied the Debtor's second motion to dismiss.

On October 1, 2018, the Debtor filed an opposition to motions filed by the Trustee to hire appraisers for the Chestnut Hill Property and New Hampshire Property. Newell and Feldman also filed an opposition that was nearly identical to the Debtor's opposition, containing the same citations and arguments, with only slight changes to reflect the parties filing the opposition. The Court overruled the objections and granted the motions.

On December 6, 2018, the Court held a hearing on the motion of Feldman and Newell in the Section 548 Adversary to dismiss the adversary and to dissolve the lis pendens. The Court denied the motions.

On January 17, 2019, the Debtor filed a motion in the Discharge Adversary to add counterclaims against HRB and her former counsel. As part of the motion, she asserted that she had potential claims against HRB for failure to pay wages. The Trustee, HRB, and former counsel to the Debtor opposed the Debtor's motion. On February 8, 2019, the Court denied the motion.

Having failed on the motion in the Discharge Adversary, the Debtor, together with Newell and Feldman, began another round of litigation in the main bankruptcy case. On February 11, 2019, the Debtor filed an objection to the HRB claim in the main bankruptcy case. The objection included an allegation that the Debtor was owed additional compensation by HRB.

13

Newell and Feldman also filed an objection to the HRB claim in the main bankruptcy case. The objection filed by Newell and Feldman was substantially identical to the objection filed by the Debtor, citing the same authorities and cases, with only minor changes to reflect the objecting party. In addition to the claim objections, the Debtor filed a motion seeking to lift the stay to permit her to reopen the arbitration with HRB in the state court.

The Trustee and HRB opposed the claim objections. HRB opposed the motion by the Debtor to reopen the arbitration on several grounds, including that the claims had been released as part of the compromise between HRB and the Trustee approved by the Court.

On April 23, 2019, the Court held a hearing on the claim objections filed by the Debtor, Newell, and Feldman. At the hearing, the Debtor admitted that the case was not likely to be a surplus case. The Court overruled the objection by the Debtor stating

> [t]he debtor, Ms. Feldman, has no standing to object to the proof of claim because she has no possibility of participating in this bankruptcy estate or in any surplus by her own admission.

Transcript April 23, 2019, p. 33. The Court also overruled the objections of Newell and Feldman for lack of standing. The Court stated that the overruling was without prejudice to the Trustee filing objections to the claim. The orders entered by the Court for each of the objections stated that the respective objection was overruled for the reasons on the record. The Court also denied the Debtor's request to lift the automatic stay. The Court expressly stated that any claims the Debtor now asserted were prepetition claims that were property of the estate and were settled by the compromise between the Trustee and HRB.

New counsel for the Debtor appeared on May 24, 2019, in the Discharge Adversary. Counsel did not appear for the Debtor in the main bankruptcy case or other adversaries. On July 3, 2019, the Debtor and the Trustee entered into an agreement for judgment against the

Debtor on all counts. On August 6, 2019, based on the agreement for judgment, the Court entered an order denying the Debtor's discharge.

In the Section 548 Adversary, the Trustee filed a motion for summary judgment on certain counts in the Complaint. Newell and Feldman opposed the motion. The Court held a hearing on the Motion on July 24, 2019. After requesting additional briefing, the Court took the matter under advisement.

The Debtor filed an appeal of the Court's denial of her motion to lift the stay to reopen the state court arbitration. On June 26, 2019, the Bankruptcy Appellate Panel dismissed the appeal as untimely. The Bankruptcy Appellate Panel subsequently denied the Debtor's motion for reconsideration on July 18, 2019.

On August 30, 2019, the Debtor filed a motion seeking to compel the Trustee to abandon her prepetition claims against HRB. The Debtor asserted that the claims had been scheduled and the Trustee had taken no action. The Trustee opposed the motion, disputing that the claims had been scheduled or should be deemed abandoned. In addition, the Trustee noted that the settlement with HRB included a release of all claims. HRB also opposed the motion on the basis that the claims were settled. On November 18, 2019, the Court denied Debtor's motion. The order expressly stated that the motion was denied since the Trustee had resolved the claims pursuant to the compromise with HRB.

On December 31, 2019, in the Section 548 Adversary, the Court entered an order on the Trustee's motion for summary judgment, granting the motion in part and denying the motion in part. The Court found that the Trustee was entitled to judgment as a matter of law to avoid the transfer of the Chestnut Hill Property by the Debtor to Newell. The Court also found that the Trustee could avoid the subsequent transfer to the Newell Trust to recover the Chestnut Hill

Property.

Less than a week after the Court entered its ruling, for at least the third time, Newell and Feldman filed a renewed motion to dismiss in the Section 548 Adversary. On January 17, 2020, the Court denied the Motion, stating:

> Defendants do not address the Court's December 31, 2019 order in their motion.
>
> To support their request, Defendants present a mix of factually unsupported legal conclusions, factual allegations that extend well beyond those stated in Plaintiff's third amended complaint, and arguments based upon inapplicable or improperly applied legal authority.

Section 548 Adversary, Order dated January 17, 2020, dkt. No. 240.

In addition, on January 6, 2020, Newell and Feldman filed a renewed objection to the HRB claim. In early February 2020, the Debtor, Newell, and Feldman filed a new round of pleadings seeking to attack the claim of HRB. Newell and Feldman filed motions for leave to file claim objections including (i) an objection to Claim 2-1 in the name of counsel to HRB, Berkowitz Oliver, LLP, which had been amended to reflect the amount of $0.00, and (ii) an objection to Claim 3-1 filed by HRB. The Debtor also filed a motion for leave to object to the same claims. The motion filed by Newell and Feldman was substantially identical to the motion filed by the Debtor, containing the same arguments, legal citations, and quotes, with only minor changes to reflect the moving party. Newell and Feldman also filed an objection to claim 2-1, and the Debtor filed a notice of joining in the objection.

On February 8, 2020, HRB sent a letter to the Debtor, Newell, and Feldman in accordance with Rule 9011. In the letter, HRB asserted that the objections to the claims of HRB by the Debtor, Newell, and Feldman had been denied by the Court, and that the renewed pursuit was in violation of Rule 9011. HRB advised the parties that if the objections were not withdrawn, HRB would seek appropriate sanctions under Rule 9011.

16

Instead of withdrawing the objections, beginning on February 10, 2020, the Debtor, Newell, and Feldman doubled down. They filed the Sanctions Motion, seeking sanctions against HRB based on the request by HRB for sanctions under Rule 9011. They also listed a multitude of other complaints for alleged actions taken by HRB in the disputes with the Debtor. They accompanied the motion with Affidavits of each of them purporting to attest to the facts in the Sanctions Motion. HRB opposed the Sanctions Motion.

HRB and the Trustee filed oppositions to the claims objections and related motions. The oppositions specifically cited the prior rulings of the Court that the Debtor, Newell, and Feldman lacked standing to object to the claims. On February 14, 2020, the Court overruled the claim objections and denied the related motions based on the lack of standing of the Debor, Newell, and Feldman. The Court specifically referenced its rulings at the hearing on April 23, 2019.

On February 13, 2020, HRB filed a motion ("HRB Motion") requesting that the Court enter an Order to Show Cause why the Debtor, Newell, and Feldman should not be sanctioned for violations of Rule 9011 and enjoined from further filings. Newell and Feldman filed an opposition to the HRB Motion, raising again their disputes as to the claims of HRB. The Debtor filed a notice joining in the opposition.

On March 11, 2020, the Court held a hearing on the Sanctions Motion and the HRB Motion. After hearing arguments by the parties, the Court denied the Sanctions Motion. The Court granted the HRB Motion and stated that it would separately issue an order to show cause why the Debtor, Newell, and Feldman should not be sanctioned for their conduct. The Court issued the March 12 Order, requiring the Debtor and Feldman to appear at an evidentiary hearing to show cause why they should not be sanctioned.[2]

---

[2] As stated earlier, the March 12 Order also originally included Newell, who passed away on

In the meantime, the Debtor continued to wage her battles with HRB, returning to the state court. On May 21, 2020, HRB filed a motion seeking to enforce the compromise with the Trustee. HRB reported that the Debtor had commenced a new action in state court asserting claims for unpaid wages and commissions allegedly owed by HRB to the Debtor prior to the bankruptcy. At an emergency hearing on May 27, 2020, the Court granted the motion of HRB to enforce the compromise. The Court specifically held that the claims were property of the estate and had been settled by prior order of the Court. The Court ordered the Debtor to dismiss the state court action with prejudice.

On May 28, 2020, the Debtor filed the Reconsideration Motion on an emergency basis, requesting the Court to reconsider the order enforcing the compromise. In the Reconsideration Motion, the Debtor claimed that she did not receive notice of the hearing or motion. The Debtor asserted that the Trustee had represented that the wage claims were not settled as part of the compromise. She also argued that the compromise was void as to the wage claims.

The Trustee filed an opposition, asserting that the claims had been settled. In the opposition, the Trustee asserted that the Debtor had misrepresented settlement communications that the Trustee had made. As part of an overall settlement with the Debtor, Newell, and Feldman, counsel to the Trustee sent a written settlement offer which specifically stated that it was for settlement purposes only and stated in part:

> 1.      John O. Desmond, Chapter 7 Trustee of the estate of Debra L. Feldman ("Trustee"),will abandon to the debtor any claims against H&R Block that are property of the bankruptcy estate and that have not already been settled, including any wage and hour claim the debtor may have against Block.
>
> 2.      The Trustee makes absolutely no representations or warranties about said claims.

---

April 18, 2020.

Exhibits T-5-475. HRB also opposed the Reconsideration Motion, on the grounds that the claims were settled.

The Court held a hearing on the Reconsideration Motion on June 30, 2020. At the hearing, the Court expressed its concern that the Debtor had deliberately misrepresented the Trustee's statements and failed to disclose that they were part of the settlement discussions. After hearing arguments by the parties, the Court denied the Reconsideration Motion. On July 2, 2020, the Court issued the second order to show cause why the Debtor should not be sanctioned for violations of Rule 9011 for her misrepresentations regarding the Trustee's statements.

The evidentiary hearings on the March 12 Order and the July 2 Order were continued from time to time due to the inability to hold in person hearings during the pandemic. The Court held status conferences on the Orders to determine the procedures, as well as requests for discovery. After further hearing, the Court limited discovery, finding that the issues for both orders to show cause were narrow. The Court directed the parties to exchange documents based on the costs sought and the defenses to the Orders to Show Cause.

The Court held an evidentiary hearing on both the March 12 Order and the July 2 Order over three days, taking testimony on the first two days and hearing closing arguments on the third day. The Debtor, Feldman, and the Trustee testified. In addition to the exhibits that were admitted, the Court took judicial notice of the docket of the main bankruptcy case and all of the adversary proceedings.

The Debtor testified on direct in narrative fashion. She began her testimony by seeking to recount her litany of complaints against HRB and the Trustee. With respect to the Sanctions Motion and the claims objections, the Debtor testified that the Debtor and Feldman believed that they could file the claims objections because the prior rulings of the Court were without

19

prejudice. She also asserted that they believed they had evidence of bullying by HRB, and that they were justified to seek the Sanctions Motion. The Debtor also testified that she believed all their pleadings were filed in good faith.

The Debtor testified that she was only doing secretarial work for her mother and did not draft the pleadings for her mother. She testified that her mother formulated the search questions and had the Debtor conduct the search. She stated that either her mother would read the resulting cases on the computer or the Debtor would read them to her. The Debtor claimed that her mother would then dictate to the Debtor what to type.

The Debtor was combative on cross examination, failing to answer questions or providing argumentative answers. She frequently claimed not to know the answer when asked about her prior pleadings or rulings of the Court. She also attempted to parse words, for example, drawing finetune distinctions between "prepare" and "draft".

With respect to the July 2 Order, the Debtor again attempted to parse words. She repeatedly pointed to the first sentence of the letter, as a stand-alone assertion that the wage claims were not settled. She steadfastly claimed that the following statement, in which the Trustee disclaimed any representations regarding the alleged wage claims, did not affect her position. She also admitted that she never spoke directly to the Trustee or his counsel regarding the settlement offer.

The Court finds that the Debtor was not credible. The Debtor is well educated and knowledgeable, and was present at the prior hearings when the Court had ruled on her objections to the claims of HRB. Her combative and contradictory testimony on cross-examination further undercuts her credibility. The Debtor told an unrealistic tale that her 94-year-old mother, who was in ill health, directed the legal research and dictated the drafting of pleadings. But, as

20

reflected above, over the course of at least two years before Newell died, the Debtor and

Feldman filed repeated pleadings regarding Newell's physical limitations and ill health. The

testimony was further contradicted by the Debtor's closing argument, in which she stated that

there was no internet at Newell's house.

Feldman also provided narrative direct testimony, claiming that he believed that they had

standing to file the claims objections based on additional evidence they learned. He also testified

that he believed that the Sanctions Motion was appropriate. Finally, he testified that the Debtor

did not give him legal advice, and instead he conducted his own research on the cases and

discussed with the Debtor the response to be made.

On cross examination, Feldman too was combative, failing to respond to questions and

challenging the questioner. He admitted that he did not know all the requirements under

Rule 9011. In particular, he admitted that he did not know about the sanctions provisions under

Rule 9011. When asked about the Sanction Motion, he claimed that he had done 20 to 40 hours

of research on the motion, although he could not recall any cases. When he was asked about the

last pleading he prepared for the case, he testified that it was several months earlier. Counsel to

the Trustee produced a pleading that Feldman had attempted to file a few days earlier. Feldman

was unable to provide any information regarding the single case citation in the document.

The Court finds that Feldman was not credible. His testimony was contradicted by his

answers on cross examination and the record. For example, Feldman claimed that he spent 20 to

40 hours on research for the Sanctions Motion. But he admitted that he did not know about

sanctions under Rule 9011. He also claimed to be unfamiliar with the HRB letter seeking

sanctions, despite the fact that the Sanctions Motion was based on HRB's assertion of potential

Rule 9011 sanctions. In addition, given that the Sanctions Motion was filed no more than three

21

days after the letter was sent by HRB, it is not credible that Feldman would have been able to spend 20 to 40 hours on research, discuss the issues with his sister, outline the proposed motion and related affidavits, and review and finalize the motion in that time frame. Feldman's inability to identify any information on a single case he cited in a pleading he prepared mere days before the hearing also undercut his testimony that he did his own research.

The Debtor called the Trustee as a witness in connection with the July 2 Order. The Debtor attempted to elicit testimony that was not relevant, asking the Trustee regarding the compromise with HRB and other actions. The Trustee stated that he had not made any representations to the Debtor regarding the wage claims except as provided in the written settlement offers that had been submitted as exhibits. The Trustee was credible and his testimony consistent with the rulings in the case and the exhibits.

HRB submitted an exhibit seeking $8,287.50 in fees related to the March 12 Order in responding to the Sanctions Motion and requested additional fees for matter related to the preparation for and participation in the evidentiary hearing. The Trustee submitted an exhibit for $1,020.00 in fees related to the March 12 Order and the July 2 Order and requested additional fees for matter related to the preparation for and participation in the evidentiary hearing. Neither the Debtor nor Feldman objected to the fees or the hourly rates.

**APPLICABLE LAW**

Bankruptcy courts have the authority to address improper, bad faith, and vexatious conduct and filings by parties. First, every motion or pleading filed by an attorney or unrepresented party must be signed, constituting a certification that the filed document complies with Rule 9011. Under Rule 9011, an individual's signature acts as a certification that

> to the best of the person's knowledge, information, and belief, formed after an
> inquiry reasonable under the circumstances,

(1)    . . . is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)    the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)    the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

. . .

Fed. R. Bankr. P. 9011(b)(1)-(3). A court may issue sanctions if it finds that Rule 9011 has been violated in order to deter future conduct of a similar nature. *Id.* at 9011(c).

Bankruptcy courts also have authority under Section 105 of the Code to regulate the conduct before them. Under Section 105 of the Code, a bankruptcy court may issue any order that is necessary or appropriate to enable the provisions of the Code to be carried out. 11 U.S.C. 105(a). Such orders may include an order that imposes sanctions in appropriate circumstances. *In re Jamo*, 283 F.3d 392, 403 (1st Cir. 2002).

Additional authority for federal courts to regulate practice before them exists under the All Writs Act, 28 U.S.C. § 1651(a). Under the All Writs Act, federal courts, including bankruptcy courts, may issue "all writs necessary or appropriate in aid of their respective jurisdictions . . . ." 28 U.S.C. § 1651(a). Such authority includes the power to sanction misconduct, including to limit access to the court by a vexatious litigant. *In re Kristan*, 395 B.R. 500, 511 (B.A.P. 1st Cir. 2008) (citations omitted).

Finally, courts have inherent power to regulate conduct before them. Federal courts have powers that exist outside of a specific statute or rule to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v.*

*Haeger*, 581 U.S. 101, 107 (2017) (citations omitted). Such power includes the power to issue sanctions for abusive conduct. *Id.*

Sanctions can include appropriate injunctions to preclude further filings or misconduct. Such injunctive relief must be issued only after notice and an opportunity to be heard, based on a clear record that justifies the relief. *See Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993). The injunctive relief must be narrowly tailored to address the issues before the Court. *See Castro v. United States*, 775 F.2d 399 (1st Cir. 1985) (per curiam), *rev'd on other grounds*, 500 U.S. 1 (1991).

Courts may also consider an appropriate remedy where a party engages in the unauthorized practice of law. *See Rental Prop. Mgmt. Servs. v. Hatcher*, 479 Mass. 542, 551, 97 N.E.3d 319, 329 (2018). A bankruptcy court looks to state law on the issue of the standard for practice of law. *See In re Lucas*, 317 B.R. 195, 208 (D. Mass. 2004), *certified question answered sub nom. In re Chimko*, 444 Mass. 743, 831 N.E.2d 316 (2005). While the practice of law is not easily defined, certain conduct is only within the province of licensed attorneys:

> Plainly the commencement and prosecution for another of legal proceedings in court and the advocacy for another of a cause before a court . . . are reserved exclusively for members of the bar. Doubtless the examination of statutes, judicial decisions, and departmental rulings, for the purpose of advising upon a question of law relative to taxation, and the rendering to a client of an opinion thereon, are likewise part of the practice of law in which only members of the bar may engage.

*Lowell Bar Ass'n v. Loeb*, 315 Mass 176, 183, 52 N.E.2d 27, 32-33 (1943) (footnote omitted).

**ANALYSIS**

The Court finds that sanctions are appropriate against the Debtor and Feldman for their conduct in the main bankruptcy case and the related adversary proceedings. The Debtor and Feldman have engaged in a pattern of vexatious litigation, repeatedly filing pleadings regarding matters that have already been addressed by the Court. Their intention is to continue the Debtor's

24

vendetta against HRB and to preclude the Trustee from taking proper action to recover assets for the estate as a result of the Debtor's prepetition transfers. They have repeatedly ignored the prior rulings of the Court, their obligations under Rule 9011, and their lack of standing.

The Court finds that the Debtor and Feldman filed the Sanctions Motion without any legal basis. The Court also finds that the Debtor engaged in the unauthorized practice of law by drafting the pleadings and directing the course of action for her mother and her brother. Finally, the Court finds that the Debtor deliberately and intentionally misrepresented statements by the Trustee in the Reconsideration Motion. As discussed more fully below, given the extent and scope of their actions, the Court will fashion sanctions against both the Debtor and Feldman to cover the costs incurred in litigating this matter, as well as injunctive relief to preclude future abusive filings, while preserving right to appeal or to defend matters directly against them.

The actions of the Debtor demonstrate her intent to continue to litigate with HRB, despite the repeated rulings against her. The Debtor admitted that she filed the petition to avoid the consequences of her loss to HRB in state court. When her efforts to dismiss the bankruptcy case failed, she then sought repeatedly to challenge the claims filed by HRB in the bankruptcy case and to pursue alleged causes of action against HRB that were property of the estate. The Court held numerous hearings and repeatedly denied the efforts of the Debtor to challenge the claims of HRB. After holding a hearing on April 23, 2018, the Court dismissed the Debtor's Adversary, in which she challenged the claims of HRB. The Court expressly ruled that the Debtor lacked standing to pursue objections to HRB's claim. Ignoring the Court's ruling, less than a year later, the Debtor, together with Newell and Feldman, again sought to object to the claims of HRB. On April 23, 2019, after holding a hearing at which the Debtor was present and argued, the Court ruled a second time that the Debtor had no standing to pursue the claim objections. Less than a

25

year later, in disregard of the prior rulings of the Court, the Debtor, together with Feldman and Newell, objected for the third time to the claims of HRB.

The Debtor also repeatedly sought to pursue purported prepetition claims against HRB, despite the fact that such claims were property of the estate. She filed an action in state court in March 2018 alleging prepetition claims against HRB. In August 2018, the Court approved the Trustee's compromise with HRB, including a release of all prepetition claims. The Debtor ignored the rulings of the Court, and instead next sought to assert claims against HRB in the Discharge Adversary in January 2019. After the Court denied her motion to add such claims, in February 2019, the Debtor attempted a different tactic to sidestep the rulings of the Court. She filed a motion to reopen the state court litigation, seeking again to assert prepetition claims against HRB. In April 2019, the Court denied the Debtor's motion, expressly ruling once again that any claims the Debtor held were property of the estate and had been settled by the earlier compromise. Despite that ruling, in August 2019, the Debtor sought to compel the Trustee to abandon prepetition claims against HRB. The Court denied the motion, ruling once again that the claims were property of the estate and had been resolved. Disregarding the repeated rulings of the Court that such claims were property of the estate and had been resolved, in May 2020, the Debtor filed new pleadings in state court to assert such claims, requiring a motion by HRB to enforce the compromise.

Feldman engaged in similar conduct, repeatedly filing pleadings for matters that had been resolved by the Court. In April 2019, the Court overruled the objections to HRB's claims filed by Feldman and Newell for lack of standing. Despite that ruling, in February 2020, Feldman filed the claims objections against HRB for the second time.

The explanations of the Debtor and Feldman in their testimony were neither credible nor

26

honest. The Court had repeatedly ruled that the Debtor and Feldman had no standing to pursue the claim objections. Their testimony that they understood the rulings to be "without prejudice" was not believable given the record of the proceedings and the multiple times the issue had been addressed. In addition, however, it is clear that the objections, like other actions, were done when the Debtor or Feldman encountered reversals in other matters. For example, the Debtor and Feldman filed objections to HRB claims shortly after the Court ruled against Feldman and Newell and granted summary judgment for the Trustee on certain counts in the Section 548 Adversary.

Ignoring their obligations under Rule 9011, the Debtor and Feldman filed the Sanctions Motion. The Sanctions Motion failed to offer any legal basis, instead repeating their litany of complaints against HRB. It was a retaliatory filing, in response to the legitimate demand by HRB under Rule 9011. In addition, Feldman admitted that he did not know the requirements of Rule 9011. Both during the initial hearing and during their testimony, neither the Debtor nor Feldman offered any recognition of their obligations under Rule 9011 or their own abusive behavior. Instead, they sought yet again to relitigate the issues already decided by the Court.

Similar to the claims objections, the Debtor and Feldman have filed numerous repeat pleadings in the main bankruptcy case and the related adversary proceedings without good cause. Although the Court had denied earlier motions to dismiss in the Discharge Adversary and the Section 548 Adversary, the Debtor, Newell, and Feldman filed consolidated motions in the Discharge Adversary and the Section 548 Adversary seeking the same relief again. As noted by the Court in its order denying the motions, the Debtor and Feldman had no basis under the law to attempt unilaterally to consolidate the unrelated adversary proceedings and their actions caused confusion and an unnecessary burden on the Court and parties. The Court's ruling did not deter

27

the repetitive filings. The Debtor, again, filed another motion to dismiss the Discharge Adversary, which was denied by the Court. Continuing to disregard the Court's rulings, Feldman filed not one but two more motions to dismiss the Section 548 Adversary, both of which were denied by the Court. Feldman filed the baseless third motion to dismiss mere days after the Court ruled against him and granted partial summary judgment to the Trustee in the Section 548 Adversary. The dockets in each of the cases also reflect multiple motions to reconsider rulings by the Court.

The Court also finds that the Debtor engaged in the unauthorized practice of law by drafting and filing pleadings on behalf of Newell and Feldman. The Debtor repeatedly sought to act for her mother and brother through various strategies. She sought to amend her mother's claim. When her attempts failed due to lack of standing, Newell purportedly filed her own pleading. Newell and Feldman next filed pleadings claiming that the Debtor could represent them based on powers of attorney. The Debtor used this strategy to file pleadings on their behalf. The Court denied the motions filed by the Debtor since the Debtor could not act pro se for others under a power of attorney. After the Debtor's repeated efforts to directly act on behalf of Newell and Feldman failed, Newell and Feldman began filing pleadings on their own behalf. But the pleadings were frequently almost identical to those filed by the Debtor, containing the same extensive citations and legal arguments.

The Debtor's assertions that Feldman and Newell drafted their own pleadings rings hollow. The Debtor's testimony that she was just a scribe for her mother was both unbelievable and inconsistent with the record. The Debtor testified that her mother did not use a computer, but directed the Debtor to the websites for research and formulated the search inquiries. According to the Debtor, her mother read the cases on the computer or had the Debtor read them to her from

28

her computer and then dictated the pleading to her Debtor. But, the scenario described by the Debtor contrasts with the repeated filings regarding her mother's frailty. Throughout the proceedings, Feldman and the Debtor frequently filed pleadings that pointed out that Newell was 94 years old, in ill health, unable to attend deposition and limited in mobility. It is even more implausible given the Debtor's closing argument, in which she stated that there was no internet at her mother's home.

Feldman's testimony that he did his own research was also not credible. At trial, Feldman claimed to have spent 20 to 40 hours researching the Sanctions Motion. The Sanctions Motion sought sanctions for HRB's demand for Rule 9011 sanctions. But Feldman testified he was not aware of the Rule 9011 provisions for sanctions, despite his alleged research. In addition, as discussed above, given that the Sanctions Motion was filed barely three days after the letter from HRB was sent, it is not plausible that Feldman could have done the extensive research and prepared the motion in such time frame. Feldman's credibility was also contradicted by his responses on cross-examination. When asked, Feldman testified that he had filed his last pleading in the case three to four months earlier. Counsel to the Trustee, however, produced a pleading from Feldman served only a few days earlier. Although the pleading only had a single case citation, Feldman was unable to provide any information regarding the case.

Finally, the Court finds that the Debtor intentionally misrepresented the Trustee's statements in the Reconsideration Motion. The Debtor's attempt to parse the settlement proposal and ignore its clear language was not believable. Moreover, she conceded that she had never discussed the issue directly with the Trustee or his counsel, contrary to the inference in the Reconsideration Motion. Her efforts to misrepresent and deceive the Court cannot be ignored.

**THE SANCTIONS**

Given the egregious and vexatious conduct, the Court finds that sanctions are appropriate and necessary against the Debtor and Feldman. As a sanction, the Court will award attorney's fees for both the Trustee and HRB. The Court will issue an initial award in the amounts sought at trial (i) $8,287.50 for HRB, and (ii) $1,020.00 for the Trustee. The Court will also permit both HRB and the Trustee to file a supplement for the fees incurred in connection with the evidentiary hearing. The award will be joint and several against the Debtor and Feldman for fees of HRB and the Trustee in connection with the first two issues in the March 12 Order, and against the Debtor only for the fees of the Trustee in connection with the issue of practicing without a license and the July 2 Order.

The Court will also enjoin both Feldman and the Debtor from filing pro se any further pleadings in this bankruptcy case or in any related adversary proceeding, without prior order of the Court, subject to certain limitations and exceptions. The Court will make exceptions to the foregoing to permit (i) any appeal or motions permitted under the Rules governing appeals, (ii) any response to a motion directed to them personally, provided the response does not exceed five pages without prior permission of the Court, and (iii) in any adversary commenced or pending against them personally, any motion permitted under the applicable rules. The foregoing will also not apply to any pleadings filed by an attorney on their behalf.

Finally, any pleadings by Feldman will require an additional certification under Rule 9011 that he is aware of his obligations under Rule 9011, that he has read any cases, statutes or rules, cited in the pleading, and that the Debtor has not prepared, transcribed, drafted, or otherwise taken any action with respect to the pleading. To the extent Feldman claims to not have ability to type or prepare a document, he may use a third-party typist or prepare a legible

30

handwritten document in accordance with the rules.

**CONCLUSION**

For the foregoing reasons, the Court will issue orders sanctioning the Debtor and

Feldman, awarding attorneys' fees to HRB and the Trustee and enjoining further filings by the

Debtor and Feldman.


Dated:      April 13, 2026                                    By the Court,


_____
Janet E. Bostwick
United States Bankruptcy Judge

31